nted states versus East. Good morning. I'd like to address first the issue of the appellate waiver of any sentence of 165 years or less. I filed a rule 28J letter with the court raising Judge Jacob's opinion in Luchman. In that case, finding that there was no consideration for the appellate waiver, we've made an argument here about lack of consideration. It looks like the consideration is that the prosecution withdrew a count that would have carried an additional ten year mandatory minimum. Now, and therefore the mandatory minimum moved from 35 years to 25 years. Of course, that would be all swallowed up in 108 months or whatever, but the judge was free to depart. The consideration, it seems to me, that your client got, it may be meager, but it's more than a peppercorn, is that the judge was freed up to go down to 25 instead of being limited to a mandatory minimum of 35 years. Well, and I point to, Judge Jacobs, your language and the basis of your opinion in Luchman where basically it was two-pronged. Two bases for saying that there was no consideration in that case. One was that without the plea agreement could have obtained the same benefit. That would not be true here with dismissal of count eight, or count five. But I submit it would be true on the second basis, and that was whether it had a practical impact on the maximum exposure. And here . . . Does that matter? Yes. I would say. What it did do is allow you to make an argument that you couldn't have made otherwise. Well, when you say . . . You could make an argument that could go down to 25 years. You could make that argument, and you wouldn't have been able to do that had the other count remained. There were arguments that, as dealing with mandatory minimum, that the plea agreement preserved the ability to make. And I submit that is . . . those sorts of arguments, there would have been there absent the plea agreement. But I would say also this practical impact, and I'm putting . . . resting a lot on that from the Luchman opinion. And that is that really what we're effectively dealing with, he received 168 years. The waiver was to 168 years. The practical impact of going from 178 years to 168 years on the maximum side had no practical effect. You can only serve a term of life. This is four times what his expected life expectancy was, and therefore the argument is that it didn't have a practical impact on the maximum exposure that he was facing. I also have said here, as an additional argument, is that I think we're dealing with an extreme waiver. I don't think there's really a question. 168 years is . . . you don't come across a case like this often. And in Rosa, this court said that when you get into these kinds of waivers, you are dealing with matters of constitutional implication and principles of fairness and justice. And there is . . . and the reason that you're dealing with that in a situation like this is that you are waiving, and the words in Rosa are, unbounded risk of error and abuse. So here, what does that really mean? And what that means is that after a waiver of right to appeal . . . This was all part of the . . . this was what the guidelines . . . It was not unfamiliar, and in the usual case, there's a requirement, of course, that judges in the plea proceeding address, do you know you have this waiver? What I submit is that when you're dealing with the extreme waiver, and it's been my experience in seeing records when judges deal with extreme waivers like this, is they go into more questioning in depth. And I submit the measure here of the questioning that was necessary was really where Rosa was going and saying this unbounded risk of error or abuse. So that when you're agreeing to this, in other words, is it knowing and voluntary, it's basically, do you understand that it lets me do anything that I don't even . . . Yes, I'm telling you I'm bound by the sentencing guidelines, but supposing I don't, so I'm everything is out the window. That waiver makes the district court the court of last resort. You can't appeal that. So where is the understanding that this waiver is so unbounded and the risk is so great of  it? And I submit that that's also a basis here as to why these appellate waivers are strictly construed, they're looked at with strict scrutiny, but especially an extreme waiver needs to have that strict scrutiny. So moving on to the substantively unreasonable argument here, now first I'm going to say that this is reprehensible conduct, depraved, deserving of a long sentence, no question. Also that the district court has . . . This is mere viewing child pornography or even mere producing child pornography. Correct. There's no violence here. Correct. The question really before the court, and also to recognize that this is a deferential appellate standard review and broad discretion of the appellate court, I recognize all of that. The question that's being raised here is whether the sentence, recognizing all of that, whether a sentence that is requiring him to spend his entire life in prison is or is not sufficient but not greater than necessary, or was a sentence where there was some possibility that at some late stage in his life he could see the light of day again. And here, what he points . . . But his counsel affirmatively argued for a sentence of over 100 years, correct? He would never see the light of day, even under his own construction of what his sentence should be. I'm not specifically recalling, I will say right now, as you're saying it to me, I find it hard to imagine that he was . . . I know that he was asking for the mandatory minimum there. There's a lot about this case that's hard to . . . Well, he certainly argued at length, and I think that was, again, this other aspect of what the reasonable expectation. I think where they were really hoping for and what the arguments were was that mandatory minimum, and it ended up on the maximum side. So if there is one statement, I would say that the . . . . . . at 25 instead of 35, then why was there not a practical impact? Because I think your argument of practical impact is that what your client did was so horrible that he couldn't really hope for a sentence that would allow him to see the light of day. I would say not, because of the whole . . . Again, the focus of the argument and position of the case where they were asking the court for the minimum of twenty-five years. So I'm saying here, at the point of appellate review and looking at these facts as they exist in the record, yes, it's reprehensible. The question is, the length being at and beyond life imprisonment, it goes counter to . . . or I shouldn't say counter to, but the judge said, even in his old age, he is a danger to the community. Therefore, he must be always incarcerated. Well, it goes counter to studies that are saying with age that someone's . . . the risk goes down. I'll just cite to one case in terms of disparity. There was this . . . this dealt with this Playpen website. The creator of this website, a terrible thing, received a thirty-year sentence. Well, he was . . . usually, if someone's at the top of the pyramid, they get the most sentence. So to have some comparison like that, and was there evidence in the case that he engaged in specific conduct? No. Did he encourage that of a hundred and fifty thousand other users and then put on display on a website that kind of conduct? Yes. Yes. And that makes him as culpable, if not more culpable, than Mr. Keith here. Lastly, just turning quickly to the NIT warrant, the . . . and I know, say immediately that all circuits have ruled against the position argued here, but it is a question of first impression for the court. Two circuits did say that the NIT warrant was invalid. The other circuits declined to reach the issue. All circuits ruled that . . . But the question is whether it's . . . In good faith. Yes. Not to raise an argument that is basically a forlorn hope. This is a very difficult argument. If the court were to agree that the good faith exception did not apply, then I would say that you would be getting into the analysis, was it ineffective assistance of counsel? Mr. Keith claims or maintains that it was not good faith to not know the judge didn't have the power to issue the warrant. Even if you get past that threshold, you have to deal with ineffective assistance of counsel under these circumstances. One is, was counsel supposed to know, come back in, make a motion timely on it, investigate this? Second, the prejudice element. The argument here on prejudice is that the stakes were so high for him that even if the motion had what might have been perceived as a slim chance at that time, nonetheless, under those circumstances, he would have taken that chance. Part of that that supports that is this plea agreement was reached soon before trial. He was heading toward trial here. The argument is that you're weighing the factors and he was close to going to trial. It supports an argument that in his calculation, he would have made that motion. Thank you. May it please the court. My name is Matthew Podolsky and I represent the United States. If I may, I'd like to start by responding to some of the arguments regarding the appellate waiver, which seems to be really the bulk of the defendant's arguments in this case. Now, Appellant's counsel just said that he was really focused on the practical impact of the appellate waiver, by which I understand to mean the fact that the defendant in practice, at the end of the process, received a very large sentence, larger than he may have hoped for. But I think what's very clear . . . That's quite an understatement. Yes, Your Honor. And it's clear that he, in practice, received a life sentence, a very, very large sentence in this case, and a sentence that corresponds with what Your Honor was discussing a few moments ago, the heinous nature of the crimes in this case. But what's important on the appellate waiver is that there is no case, there is no case in this circuit that suggests that a defendant may get out of his appellate waiver simply because the practical impact is that there was a very large sentence at the end of the day. In fact, there have been multiple cases that have enforced an appellate waiver with sentences just like this one. So I'll refer the Court to United States v. Brunetti. That's at 376 F. 3rd, 93. Did his counsel argue for over 100 years? My recollection, Your Honor, is that his counsel really . . . the main thrust of his argument was to have a sentence that would give him a chance to leave prison before he died. I think a sentence in the range of 25 to 30 years. I believe that's at least what he argued in his submission. But just returning to Brunetti for a moment, Your Honor, that's a case where this Court enforced an appellate waiver where the defendant waived an appeal of a mandatory life sentence. More recently, a summary order in United States v. Lewis also enforced an appellate waiver where the waiver was to a guideline sentence of 360 months to life. So the mere fact that the waiver may go to a very large sentence is simply not sufficient to void a waiver. And just to respond briefly to the arguments made about Rosa, that Rosa somehow raises constitutional dimensions, there's really a few things to note about that case. The first is, that case was when the guidelines were mandatory. And so what that case focuses on, and that line of cases focuses on, is that the defendant can't expect to have a sentence well above the mandatory guidelines, and therefore the court should look particularly carefully to determine whether the waiver was knowing and voluntary in the unusual plea agreement where the defendant waives his right to appeal a sentence well above the mandatory guidelines contained in the plea agreement. And I will also note about Rosa that the appellate waiver was enforced in that case. The court said we'll take a particular look to make sure that the appellate waiver is knowing and voluntary, and the court concluded that it was. In this case, if you, based on my review of the transcript, I think that the defendant was asked at least three times if he understood that the appellate waiver would go up to the statutory maximum of 168 years. He said yes each time. I think he was asked at least three times separately if he agreed and voluntarily waived an appeal of any sentence up to the statutory maximum or the guideline sentence of 168 years. He said yes to each time he was asked. So it is clear that in this case the appellate waiver was knowing and voluntary. The only other requirement, just to touch on, this is where the argument began, is that there be some valid consideration. I believe Judge Jacobs, you referred to it as more than a peppercorn in this case. It is true that at the end of the day, it didn't ultimately benefit Mr. Keith in terms of his sentence. But it was a substantial benefit viewed ex ante, which is what the court is required to look at. And again, that's in United States versus Brunetti. And that's because on the eve of trial, faced with a short conviction, the defendant was able to secure himself a chance at least at a sentence ten years lower than he otherwise would have received. So it was a substantial benefit, and I don't want to put too much emphasis on this. We noted it in our 28-J letter, but one indicia that this was a substantial consideration is that the defendant came to the government on the eve of trial and asked for this plea agreement. He particularly sought out this benefit. And he was also permitted, this was important to him, to reserve certain legal arguments regarding the mandatory minimum. And in a very limited way, preserved his right to appeal those arguments. So there was consideration in this case clearly under the law. Let me turn very briefly to substantive reasonableness. Although clearly our position is that the court need not reach this question. Appellant's counsel is focused on it. So let me just note this. The main thrust of the argument here seems to be that the 168 year sentence is way out of line with comparable cases. And that's just not correct. So I'd be happy to go through each of the cases the appellant relies on. But the basic point here is that none of them are like this case. They're all cases that involve downloading child pornography, possessing child pornography, and a few instances in a non-coercive and non-violent way making child pornography. They also almost invariably involve defendants with no criminal history, or at least very limited criminal history. I'm not sure this makes any difference, but did the court explain why it thought 168 years was appropriate and 107 years was not? Yes, your honor. The court did pose a question at sentencing, essentially. Would the mandatory minimum of 25 years be appropriate? Would a sentence that is functionally life, perhaps, and I believe probation recommended an 83 year sentence. Or would a sentence at the guidelines level of 168 years be appropriate? And I say appropriate, actually it's necessary. And the court was scrupulous about pointing out that the question was, what sentence is necessary? And the court's analysis was, and I think the transcript is very clear about this. How can anyone say 168 years is necessary and 150 years is not necessary? Well, your honor, I think in part this is why there's substantial deference to the judgment of the district court. But I think the court's reasoning is this. General deterrence. Correct. So the nature and circumstances of, so first the court points out. People are going to be afraid to be sentenced 168 years, whereas they wouldn't be frightened about being sentenced to 100 years. That's right. So let me just say the court first points out that in terms of danger to the community, a sentence of functionally life would respond to that concern. But then the court looks at other factors, such as the nature and circumstances of the offense, general deterrence, and just punishment for an offense like this. And- Just punishment is life, maybe. And the life is, this is well beyond life, at least life as we know it. We can all hope for medical improvements. That's right. I think the point is this, your honors. A life sentence would protect the community from the defendant. But in terms of sending a message to potential offenders, a message to the community about what is just, a sentence below the guidelines in this case was, I think the court concluded, not sufficient. That in this case, those factors required a sentence of 168 years. And I don't think that it was substantively unreasonable for the court to conclude that. And one reason that I know that is, just turning back to some of the cases. If you look at some of the cases that are more similar, or actually similar to this case, they are in this range. So United States versus Hamilton, this is at 548 Federal Appendix 78. This is, I think, the most similar to this case, a child predator, someone who filmed himself attacking children. He had a criminal history category of three, so some criminal history, not six, like this defendant. And in that case, an 150 year sentence was upheld as substantively reasonable. United States versus JAS, this is at 331 Federal Appendix 850, there was an accompanying opinion as well. In that case, a husband and wife transported their daughter and a daughter's friend across state lines for sexual acts. No criminal history, or at least criminal history category of one. In that case, a 115 year sentence was substantively reasonable. United States versus Davis, 624 F3rd 508, United States versus Rosa, 626 F3rd 56. Both cases that I think, less criminal history and significantly less heinous acts, 120 year sentences for each of those defendants. So this sentence is simply not out of line with comparable sentences. Thank you. Thank you, Your Honor. We'll hear rebuttal. Very brief, Your Honor, and again, turning to the waiver, is I believe, if I understood correctly, my learned counsel's argument about practical impact. It's not an after, and I'm not making an argument, you look after the fact. It is, as you would in contract analysis, you look at the time the contract is made. Was there a benefit or a practical impact of the benefit? And the argument is it did not have that practical impact in terms of the maximum sentence that he was. A practical impact would have been some range where he had a possibility of release before the end of his life. That's the practical impact. Goodman, which Judge Jacobs, you cited in Lutchman, and I quote it, or I'm paraphrasing it right now, but it's in the opinion that it was said that there was no consideration because there was very little benefit. So I would, if that's, therefore, there is an argument here that supposing you were to say it's something, but it's so little in comparison to what the exposure was, from going from 178 years to 168 years, if you're going to call it a benefit, it's very little benefit in reality. 168 years to 25 years, as opposed to 35 years. That is the issue. I mean- It's apples and oranges. You seem really to be arguing that your client's acts are so depraved that there was no realistic expectation of that. I'm not making that argument now. When I turn on the substantive reasonableness aspect of this, I'm not saying to this court this is deserving of the lower end. What I am saying is, the issue is, should the sentence have been, by the time he's in his 70s or 80s, does he get released? If he's still alive at that time, is there still remain a sentence that has a hope of release? And there's a big difference to a human being in prison, whether that hope is still there. So that's something to be said. And then, last thing, the argument that there was, he preserved the ability to argue minimum, certain minimums here. That had to do with, if I understand what counsel was referring to, whether certain state court convictions constituted, I think, under federal law or under an enhancement, sex abuse crimes that would qualify for an enhancement. He would have had that argument anyway without the plea agreement. Thank you. Thank you. Thank you both. We'll reserve decision.